**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | Case No.  3:04CR002 |
| | | Case No.  3:06CV391 |
| | : | |
| vs. | | District Judge Walter Herbert Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| RODNEY NICHOLS, | | |
| | : | |
| Defendant. | | |
| | : | |

**REPORT AND RECOMMENDATIONS[1]**

## I.  INTRODUCTION

In May 2004 a jury found Defendant Rodney Nichols guilty of committing three federal crimes: possession with intent to sell crack cocaine; possession of a firearm in relation to a drug trafficking crime; and possession of an unregistered firearm.  Nichols is presently serving a 120-month sentence in a federal penitentiary.  Having previously and unsuccessfully pursued a direct appeal of his criminal convictions, *see* Doc. #44; *see also United States v. Rodney Nichols*, 184 Fed. Appx. 532 (6th Cir. July 2, 2006), Nichols' case is presently before the Court upon his *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. §2255 (Doc. #46), the Government's Answer (Doc. #55), and

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

the record as a whole.

## II. FACTUAL BACKGROUND

The United States Court of Appeals for the Sixth Circuit described the facts of this case as follows:

> In December of 2003, nineteen-year old Nichols and his girlfriend were passing a quiet evening at home with a film. According to Nichols, just before midnight, his girlfriend asked him to pick up her prescription asthma medication and a bag of chips from the local drug store. Nichols agreed because he was looking forward to smoking crack, and his girlfriend, who was concerned for the welfare of her child, forbade it in the house. Nichols put a loaded, sawed-off shotgun in the trunk of his car – because the neighborhood was dangerous – and set out with a bag of crack. Nichols testified that, on his way to the store, he realized that he had forgotten not only his girlfriend's ID card, but also the hollowed-out cigars that he used to smoke crack. He turned around and drove toward his home.
>
> Officers Barnes and George noticed Nichols, who appeared to be going nowhere in particular, because he made several turns without signaling. They stopped him and determined that there was an outstanding warrant for his arrest. Following police procedure, they asked Nichols to sit in the cruiser, and because he had been the only occupant of his girlfriend's car, they impounded it. As part of the impound process, Officer George conducted an inventory of the car. While the inventory was in progress, Nichols told Officer Barnes about the gun in the trunk. He also volunteered that the gun was probably stolen because he had purchased it on the street for fifty dollars. Using its serial number, the officers determined that although the gun had not been reported stolen, Nichols was not its registered owner. According to Nichols, there had been several burglaries in the area and he had purchased the gun to protect his girlfriend and her child, who were, at that moment, at home *sans* gun.
>
> When they arrived at the station house, Officer Barnes and Officer George searched Nichols's person. During the search, they asked him if he was carrying anything illegal. Nichols answered that he might have crack in one of his jacket pockets and, as predicted, Officer George found a bag containing eight rocks of the drug. He left Nichols in Officer Barnes's

custody while he processed the evidence. According to Officer Barnes, once Officer George left the vicinity, Nichols said that he had planned to sell the crack because Christmas was coming and he needed money to buy gifts. At trial, Nichols denied the statement and claimed that he had purchased the drug solely for personal use.

*United States v. Rodney Nichols*, 184 Fed.Appx. 532, 534 (6th Cir. 2006).

## III. NICHOLS' §2255 MOTION AND CLAIMS

Nichols begins his Memorandum in Support of his Motion to Vacate with a general statement of his federal constitutional claims:

> As a matter of introduction, the Petitioner, Rodney Nichols submits that the evidence that transpired in the instant case constitutes a denial of the Petitioner's right to be free from illegal search and seizure, as well as a denial of Petitioner's due process rights in violation of the fourth and fourteenth amendments and a denial of his sixth amendment right to effective assistance of counsel. Further, the errors alleged were not procedural, but substantially infringed upon the Petitioner's Constitutional Right to due process of law.

(Doc. #46, Memorandum at 1). Nichols then requests that the Court adjudicate five issues:

1. Whether the stop of Petitioner's vehicle was justified when no traffic ticket or warning was given to the Petitioner to support the stop?

2. Whether consent to search Petitioner's vehicle was necessary?

3. Whether Petitioner's traffic stop was based on racial profiling?

4. Whether counsel was ineffective for failing to challenge the initial traffic stop?

5. Whether counsel was ineffective for failure to challenge the possible racial profiling, when the officer's initial stop was an alleged traffic violation when no citation or warning was given to support a traffic stop?

3

(Doc. #46, Memo at 1-2).

Nichols also states, in an Amended Motion to Vacate, "This case presents an extensive challenge to the method of selecting criminal petit juries in the Southern District of Ohio (Western Division at Dayton)...." (Doc. #46 at 1). He claims that the District Court's method of jury selection violates the Fifth and Sixth Amendments to the Constitution; the jury selection and services act of 1968, 28 U.S.C. §1861; and the District Court for the Southern District of Ohio's plan for random selection of grand and petit juries. *Id*. And, lastly, Nichols contends that his trial counsel provided ineffective assistance by not challenging the absence of African American jurors or jury-pool members, or the method of selecting petit juries used in the United States District Court for the Southern District of Ohio.

The Government contends that Nichols' claims that his trial counsel provided constitutionally ineffective assistance lack merit and that his remaining claims are barred by procedural default.

## IV.    ANALYSIS

### A.    Procedural Default and Waiver

Most challenges to a federal criminal conviction must be litigated in a direct appeal. "Given society's substantial interest in the finality of judgments, only the most serious defects in the trial process will merit relief outside of the normal appellate system." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). Because of this, a defendant risks losing the opportunity for merit review by failing to raise claims on direct

appeal. *See Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000)(and cases cited therein); *see also Murr v. United States*, 200 F.3d 895, 900 (6th Cir. 2000). Such procedural defaults are excused when the defendant shows both cause and actual prejudice. *Phillip*, 229 F.3d at 552; *see Murr*, 200 F.3d at 900. "This hurdle is an intentionally high one for the petitioner to surmount, for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000).

On Nichols' direct appeal, the Court of Appeals described his three claims as follows:

1. [T]he district court erred by refusing to grant acquittal on Count I based on insufficiency of the evidence. Specifically, Nichols argues that the crack in his possession was solely for personal use, that its amount was commensurate with personal use, and that the government failed to prove that Nichols intended to distribute the drug.

2. [T]he district court should have granted his motion for acquittal on Count II of the indictment. Specifically, he asserts that the government did not prove that he was carrying a gun in furtherance of a drug trafficking crime under 18 U.S.C. §924(c)(1).

3. [T]he district court improperly admitted expert testimony of Officers George and Barnes.

(Doc. #44 at 3, 5, 7). Nichols did not raise any Fourth Amendment challenge to the traffic stop or to the search of the vehicle, and he did not claim that the traffic stop was based on racial profiling in violation of his constitutional rights. As a result, Nichols committed a procedural default with regard to each of these claims. Nichols alleges that he wanted to raise these claims on direct appeal but that his appellate counsel failed to do

5

so despite his request, and that this constituted ineffective assistance of counsel. (Doc. #46, Exhibt. A at 3).

For reasons to be explained next, *infra*, §IV(B), Nichols' claims of constitutionally ineffective assistance of counsel lack merit, and consequently, counsel's constitutionally sufficient representation does not establish cause and prejudice to excuse his procedural defaults.

Accordingly, Nichols' procedural default results in a waiver of his Fourth Amendment claims concerning the traffic stop and search of the vehicle as well as his racial profiling claims. Because Nichols claims of ineffective assistance of counsel are cognizable by way of a §2255 Motion, *see United States v. Pierce*, 62 F.3d 818, 833 (6th Cir. 1995), the analysis turns to whether these claims have merit.

### B. Ineffective Assistance of Counsel

To establish an ineffective assistance of trial counsel claim, Nichols must establish both that his counsel provided constitutionally deficient performance and that prejudice resulted. *Valentine v. United States*, 488 F.3d 325, 331 (6th Cir. 2007); *see Strickland v. Washington*, 466 U.S. 668 (1986). To show deficient performance, counsel's representation of Nichols must have fallen below an objective standard of reasonableness. *See Valentine*, 488 F.3d at 331; *see also Strickland,* 466 U.S. at 688.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that

>counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Strickland*, 466 U.S. at 689.

Nichols contends that his counsel's performance was objectively unreasonable because she did not challenge the initial traffic stop and the subsequent search of the vehicle. Nichols emphasizes that these challenges were especially warranted because the police stopped him for speeding but never issued a written traffic citation. (Doc. #46, Memo. at 8-9). Nichols also contends that police officers forced him out of the vehicle, handcuffed him, and began to search the vehicle. (Doc. #46, Memo. at 8-9).

The problem Nichols faces, and has not overcome, is that the traffic stop was initiated not because he was speeding but because he had made several turns without signaling. The Court of Appeals explained as much and further indicated Nichols was then arrested, handcuffed, and placed in the police cruiser. Because the vehicle did not belong to Nichols, it was impounded resulting in an inventory search, during which Nichols – to his credit – told Officer Barnes about the shotgun in the trunk. (Doc. #44 at 2). Given these facts, the officers had probable cause to initiate the traffic stop due to their observations of his violation of Ohio traffic law. "[P]olice may make a stop when they have probable cause to believe a civil traffic violation has occurred...." *United States v. Simpson*, __ F.3d __, __, 2008 WL 877849 (6th Cir. 2008) (also noting, "virtually every other circuit court of appeals has held that reasonable suspicion suffices to justify an

investigatory stop for a traffic violation."); *see also United States v. Garrido-Santana* 360 F.3d 565, 571 (6th Cir. 2004).

The traffic stop ripened into an arrest after the officers learned about the outstanding arrest warrant pending against Nichols. Given that fact, and since Nichols does not suggest, and the record does not reveal, a reasonable basis questioning the validity of the arrest warrant, his arrest was supported by probable cause and did not violate his rights under the Fourth Amendment. *See Greene v. Reeves,* 80 F.3d 1101, 1105 (6th Cir.1996) ("The Fourth Amendment requires that arrest warrants be issued only upon a showing of probable cause.").

Lastly, the record contains no dispute that Nichols was not the owner of the vehicle, and that as a result, the officers conducted an inventory search of the vehicle before impounding it. Nichols again presents no particular fact that would invalidate the inventory search. In this situation, the warrantless inventory search of the vehicle did not violate Nichols' Fourth Amendment rights. *See United States v. Smith*, 510 F.3d 641, 650 (6th Cir. 2007) ("A valid inventory search conducted without a warrant does not violate the Fourth Amendment.").

Nichols' counsel explains in her affidavit, "Based on my discussions with Mr. Nichols, and based on case law researched, I did not believe that Mr. Nichols had any viable suppression issues." (Doc. # 55, Exh. A at ¶10). This conclusion was consistent with the cases cited above and with Nichols' statements to counsel that "he failed to signal a right turn prior to the police stopping him." *Id.* at ¶s 5-6. Counsel's decision not

8

to file a Motion to Suppress was therefore objectively reasonable.

Nichols also asserts that his counsel failed to investigate a racial profiling claim even though he asked her to do so. Accepting this as true, Nichols alleges no particular fact that would have alerted counsel to the possibility that the officer's decision to initiate the traffic stop was based on racial profiling or that their asserted reason for stopping him – his failure to signal three turns – was a pretext for racial profiling. *See* Doc. #44, Memo. at 8-9. Instead, Nichols generally claims, "Counsel was ineffective for failure to challenge the racial profiling on the totality of the circumstances of the traffic stop as a whole." *Id*. at 8. Because Nichols acknowledged to his counsel that he had failed to signal when turning – a fact consistent with what counsel knew the police officers had reported – and because the evidence and circumstances facing counsel did not provide any reason to suspect racial profiling, both the information at hand and case law provided counsel with an objectively reasonable basis for not filing a Motion to Suppress.

Nichols lastly bases his ineffective assistance claim on counsel's failure to raise various constitutional and statutory challenges to the selection of the jury in his case and to the method of selecting petit juries in criminal cases in the Southern District of Ohio. Nichols' Reply in Support of his §2255 Motion raises many arguments in support of this claim. *See* Doc. #46 (and attached Amended Motion and Memoranda).

Nichols' counsel states in her affidavit, "During jury selection, Mr. Nichols never requested that I challenge the jury pool's composition, nor did I believe any such challenge to be necessary at that time." (Doc. #55, Exh. A at ¶11). In contrast, Nichols

9

states in his affidavit that his counsel "refused to challenge my concerns of an all white jury, and that there were no blacks whatsoever in the jury selection as a whole...." (Doc. #56, Exh. A at ¶3). Nichols also relies on his mother's affidavit, who stated, in part, that his counsel informed him, "There [are] only certain people who may be selected for jury duty and that i[t] was not a good idea to challenge the jury selection." (Doc. #56, Exh. C at ¶3).

     Accepting as true Nichols' assertion that he asked his trial counsel to raise his several challenges to the jury and that counsel refused, Nichols has not shown that counsel's decision was objectively unreasonable or fell outside the wide range of professional competence counsel's decision are due. *See Strickland*, 466 U.S. at 689. This is so because Nichols does not allege that he provided counsel any specific information – or that such information was apparent – that should have alerted her to a viable constitutional or statutory claim based on the jury's composition. Although no African-Americans were seated on the jury, or indeed in the jury pool, this fact alone does not establish a constitutional violation. *See United States v. Cooke*, 110 F.3d 1288, 1301 (7th Cir. 1997) (The Defendant's "mere observation that there were no African-Americans on a panel that was drawn from a population containing African-Americans simply is not sufficient to demonstrate any systematic exclusion."). Nichols correctly understands that the "Sixth Amendment requires that the jury venire from which a jury selected represent a 'fair cross-section' of the community.'" *United States v. Allen*, 160 F.3d 1096, 1103 (6th Cir. 1998)(quoting in part *Taylor v. Louisiana*, 419 U.S. 522, 528 (1975)). But Nichols

overlooks that the Sixth Amendment does not require the petit jury chosen in a particular case "to mirror the community and reflect the various distinctive groups in the population. Defendants are not entitled to a jury of any particular composition." *Holland v. Illinois,* 493 U.S. 474, 483 (1990)(quoting *Taylor*, 419 U.S. at 538). His many arguments, moreover, reveal no ground that should have alerted his counsel to any constitutional or statutory problem. *Cf. Cooper v. United States*, 2007 WL 2110493, 12 (S.D. Ohio) (S.D. Ohio 2007)("nothing in the record indicates either that the percentage of African Americans selected for the venire was not 'fair and reasonable in relation to the number of such persons in the community,' or that any under representation of African Americans was the result of their systematic exclusion from the jury-selection process."); *cf. also United States v. Downs*, 217 Fed.Appx. 841, 845 (11th Cir. 2006).

Lastly, while Nichols seeks an evidentiary hearing, one is not warranted because, as discussed above, if his factual allegations concerning counsel's conduct and omissions are accepted as true, his ineffective assistance of counsel claims lack merit. *See Valentine*, 488 F.3d at 325

Accordingly, Nichols' claims of ineffective assistance of counsel lack merit. Accordingly, Nichols' Motion to Vacate, Set Aside, or Correct Sentence lacks merit and should be denied. Because no reasonable jurist would disagree with this conclusion, Nichols should be denied leave to appeal *in forma pauperis* and any requested certificate of appealability.

11

## IT IS THEREFORE RECOMMENDED THAT:

1. Nichols' Motion to Vacate, Set Aside, or Correct Sentence (Doc. #138) be DENIED; and

2. The case remains pending on Nichols' Motion for Retroactive Application of Sentencing Guidelines to Crack Cocaine Offense (Doc. #61).


May 30, 2008

                                                s/ Sharon L. Ovington
                                                Sharon L. Ovington
                                           United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).